UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEY LUIS URENA,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 1:25-cv-00062-JLT-GSA<br><br>**FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO GRANT DEFENDANT'S CROSS MOTION, AND TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>**(Docs. 15, 17)** |

## I. Introduction

Plaintiff Joey Luis Urena seeks judicial review of a final decision of Defendant Commissioner of Social Security denying his applications for social security disability insurance benefits and for supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is before the undersigned for issuance of Findings and Recommendations based on the parties' briefs. After reviewing the record, the undersigned finds that substantial evidence and applicable law support the ALJ's decision and recommends that the Court direct entry of judgment in favor of Plaintiff and against Defendant reversing the final decision of the Commissioner of Social Security.

## II. Factual and Procedural Background

Plaintiff filed applications for social security disability insurance benefits and for supplemental security income on May 14, 2021, and June 7, 2021, respectively, alleging disability beginning October 1, 2014. AR 17. These claims were denied initially on September 24, 2021, and upon reconsideration on January 5, 2022. AR 17. On October 31, 2023, the ALJ held a hearing. AR 33–52. On January 23, 2024, the ALJ issued an unfavorable decision. AR 14–32. The Appeals Council denied review on November 14, 2024. AR 1–6. Plaintiff then filed

the instant complaint in this Court.

**III. Standard of Review**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).

Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

**IV. Evaluating a Claimant's Alleged Disability**

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education, and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

Finally, errors in Social Security disability determinations are subject to harmless error analysis. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014); Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012). "An error is harmless if it is 'inconsequential to the ultimate nondisability determination' . . . or 'if the agency's path may be reasonably discerned,' even if the agency 'explains its decision with less than ideal clarity[.]" Treichler, 775 F.3d at 1099 (citation omitted).

## V. The ALJ's Decision

At step one, the ALJ found that the claimant had not engaged in substantial gainful activity since October 1, 2014, the alleged onset date. AR 20.

At step two, the ALJ found that Plaintiff had the following severe impairments: "diabetes mellitus with chronic kidney disease and diabetic gastroparesis, and traumatic brain injury/neurocognitive disorder." AR 20.

At step three, the ALJ found that "The claimant does not have an impairment or

combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." AR 21.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform medium exertional work as defined in 20 CFR 404.1567(c) and 416.967(c), with the following non-exertional limitations:

> He can understand, carry out, and remember simple instructions; make commensurate work-related decisions; respond appropriately to supervision, coworkers, and work situation; can deal with routine changes in work setting; and can maintain concentration, persistence, and pace up to and including two hours at a time with normal breaks throughout a normal workday.

AR 22.

At step four, the ALJ found that the claimant had no past relevant work. AR 25.

At step five, in reliance on the VE's testimony, the ALJ concluded that Plaintiff could perform other jobs existing in significant numbers in the national economy, namely: cleaner II, kitchen helper, and dining room attendant. AR 25.

Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since the alleged onset date of October 1, 2014. AR 26.

## VI. Issue Presented

Plaintiff asserts one claim of error, "The ALJ's RFC and MRFC is not supported by substantial evidence." MSJ at 1, ECF No. 15.

Plaintiff essentially summarizes his claim of error with the following:

> A review of the unfavorable opinion reveals that the ALJ harmfully erred by basing the RFC and MRFC on his own lay review of the entire medical record, consisting of esoteric, "raw" objective medical evidence, documenting Mr. Urena's physicians' diagnostic impressions of, traumatic brain injury, obstructive sleep apnea, chronic kidney disease, depression and anxiety consisting of esoteric laboratory reports; imaging reports; and objective physical and psychological examination findings, none of which contained any functional analysis beyond abnormal diagnostic impressions.

**A. <u>RFC Generally</u>**

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity (RFC). *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

**B. <u>An ALJ's Duty to Develop the Record</u>**

"In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." <u>Smolen v. Chater</u>, 80 F.3d at 1288 (quoting <u>Brown v. Heckler</u>, 713 F.2d 441, 443 (9th Cir. 1983)); <u>see</u> <u>also</u> <u>Howard ex rel. Wolff v. Barnhart</u>, 341 F.3d 1006, 1012 (9th Cir. 2003) ("In making a determination of disability, the ALJ

must develop the record and interpret the medical evidence.") (citation omitted); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) ("The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests.") (citation omitted) (emphasis added). However, the ALJ's duty to conduct an appropriate inquiry is triggered only when there is "[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence." Tonapetyan, 242 F.3d at 1150 (citations omitted). When triggered, the ALJ "may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, [*7] or keeping the record open after the hearing to allow supplementation of the record." Id. (citations omitted).

A specific finding of ambiguity or inadequacy in the record is not required to trigger the necessity to further develop the record where the record itself establishes the ambiguity or inadequacy. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011); *Garcia v. Comm'r of Soc. Sec.*, No. 1:19-CV-00545-SAB, 2020 WL 1904826, at *13 (E.D. Cal. Apr. 17, 2020).

The ALJ is not permitted to fill the evidentiary gaps of the record by rendering a medical judgment and interjecting his own medical opinion to develop the RFC. See Tackett v. Apfel, 180 F.3d at 1102. "As a layperson, an ALJ is not qualified to extrapolate functional limitations from 'raw medical data' but may make reasonable inferences from medical evidence susceptible to a lay understanding." see Katie E. B. v. Kijakazi, No. 20CV2354-MDD, 2022 WL 4595062, at *8 (S.D. Cal. Sept. 30, 2022).

Finally, this independent duty to fully and fairly develop the record and to assure that a claimant's interests are considered extends to the represented as well as to the unrepresented claimant. Tonapetyan v Halter, 242 F.3d at 1150 (9th Cir. 2001).

**C. Analysis**

Plaintiff's brief provides a thorough 14-page description of the medical evidence the ALJ was allegedly unqualified to independently interpret. Defendant responds that the Plaintiff did not meaningfully address the ALJ's discussion of the evidence.

Plaintiff points to the following medical evidence which he claims the ALJ was not qualified to interpret:

- 9/16/14 note from Dr. Naeem dated, documents poorly controlled diabetes (AR 618); "poor insight." (AR 620); blood glucose 171. (AR 620)
- 1/6/15 visit reports concussion 1 month earlier upon hitting head on tree branch, followed by issues with memory; complaints of chronic back pain and knee pain. (AR 613) The treatment plan included referral to neurology
- 1/17/2015 visit notes symptoms of poor memory characterized by occasional forgetfulness, including forgetting conversations, repeating oneself, and slower mental processing, with reported occasional tinnitus, significant anxiety, and diffuse headaches. (AR 815). Dr. Reddy assessed post-concussion syndrome, anxiety, memory impairment, headache. (AR 816).
- 4/7/15 follow-up note from Dr. Naeem notes continued complaints of dizziness, vision changes, abdominal pain, and memory loss. (AR 604). The treatment plan included a referral to psychiatry for history of ADHD and worsening anxiety. (AR 606).
- 4/28/15 visit for review of brain MRI documenting "3.8 x 1.5 cm left middle cranial fossa arachnoid cyst" for which Dr. Reddy referred Mr. Urena to a "neurosurgery consultation," for arachnoid cyst coupled with post-concussive syndrome and headaches (AR 803).
- 9/13/16 neurology follow-up note from Dr. Reddy documents short-term memory difficulties, headaches episodes of photosensitivity, lightheadedness, and difficulty with fine motor skills. (AR 575). The treatment plan included a referral to neurosurgery for evaluation of an arachnoid cyst, and to neuropsychology to evaluate memory impairment, probably multifactorial from depression, ADHD, and concussions. (AR 576).
- 12/13/16 neurology follow-up note from Dr. Reddy (AR 739) diagnosing headache, arachnoid cyst, postconcussion syndrome, and memory impairment. (AR 740). The treatment plan included the anti-convulsant, Topamax 25mg, and a referral to a "neuropsychologist." (AR 740).
- 1/19/17 visit with PA-C Toudouze and Dr. Johnson documenting similar symptoms in addition to photosensitivity, and reflecting diagnoses including left middle fossa arachnoid cyst, and referral for neuropsychology consult and vestibular therapist.

As to the brain MRI, some district court authority suggests that imaging results may be outside a layperson's comprehension. See, Howell v. Kijakazi, No. 20-CV-2517-BLM, 2022 WL 2759090, at *7 (S.D. Cal. July 14, 2022) (MRIs, radiological studies, and X-rays "generally reflect only the findings, impressions, and medical diagnoses, which are difficult for a lay person

to interpret.”).

On the other hand, unpublished Ninth Circuit authority provides that it is proper for an ALJ to consider “all of the various types of evidence in the medical record, including objective evidence such as x-rays, [claimant’s] treatment history, and clinical findings,” and then translate and incorporate this evidence into an RFC finding. See, Bufkin v. Saul, 836 F. App’x 578, 579 (9th Cir. 2021) (unpublished).

In either case, the left middle fossa arachnoid cyst was elsewhere described as “asymptomatic” and “incidental” (AR 735–36), which the ALJ found to be non-severe and which the Plaintiff does not contest. Thus, as to this finding no medical expertise was needed to interpret this MRI record as the terms asymptomatic and incidental are well within common lay understanding.

Next, Plaintiff cites visit notes reflecting complaints of poor memory characterized by “occasional forgetfulness,” including forgetting conversations, repeating oneself, and slower mental processing with reported “occasional tinnitus,” significant anxiety, and diffuse headaches (elsewhere described as mild and temporary). AR 731, 815 (emphasis added). But these characterizations do not suggest debilitating symptoms and no medical opinion or special expertise was required for the ALJ to interpret these symptom complaints.

Plaintiff also cites referrals to neurosurgery and neuropsychology along with his diagnosis of post-concussion syndrome, yet there is no evidence that these referrals and diagnoses resulted in any treatment other than Topamax to relieve his mild temporary headaches. AR 731.

Plaintiff further lists 40 different mental status examination findings (MSE) and symptoms documented in an October 22, 2015 psychiatric exam and in a December 21, 2015 follow up. MSJ at 4–5 (citing AR 591–92). The fact that these findings contained abnormalities is not especially significant absent some explanation by Plaintiff about how the RFC, which contained

extensive restrictions accounting for Plaintiff's mental limitations, was deficient. In addition, Plaintiff's MSE findings and symptoms, such as anxious mood, tangential thought content, pressured speech, poor concentration, are not raw medical data, nor are they, as Plaintiff asserts, "esoteric/complex" MSJ at 9. These are arguably the most basic aspects of psychiatric records, analogous to physical examination findings such as muscle strength, tenderness, joint range of motion, and gait.

Next, Plaintiff discusses his diabetes, kidney disease and other maladies citing the following records:

- 9/10/14 endocrinology treatment note documents fatigue and flu-like symptoms, A1c of 14%, blood sugar in the 400s (AR 451), 6x daily nocturia (AR 453), HgbA1c of 7.4%, resulting in a diagnosis of diabetes mellitus uncontrolled with renal (proteinuria complications), increased LFTs with fatty liver disease, obesity, and vitamin B12 and D deficiencies (AR 455-456).
- 9/16/14 treatment note to the same effect (AR 620)
- 5/1/15 nephrology exam for chronic kidney disease, diabetic nephropathy with creatinine of was 1.10, eGFR 82, prescription for Losartan 25mg and renal ultrasound (AR 781);
- 8/14/13 through 5/11/17 gastroenterology notes document complaints of sharp and intermittent abdominal pain, history of elevated liver function tests [LFTs], loose stools, rectal bleeding, elevated AST and ALT levels, high glucose levels, unfavorable lipid profiles elevated Hemoglobin A1c, evidence of fatty liver disease and (AR 853, 869, 878, 880, 884, 888, 899); moderate fibrosis on imaging, and a mildly decreased gallbladder ejection fraction (AR 853, 856, 871, 872, 874, 875, 876, 877, 881, 882, 883, 885, 890, 896, 898), GERD with esophagitis, upper and generalized abdominal pain, elevated LFTs, loose stools, H. pylori infection, family history of colonic polyps, and nonalcoholic steatohepatitis (NASH) (AR 853, 869, 878, 880, 884, 888, 899) and treatment involving trials of antispasmodics for abdominal pain, initiation or re-initiation of PPIs (omeprazole, Protonix) and Zantac for reflux symptoms, and emphasis on weight loss, tight glycemic control, and aggressive management of hypertriglyceridemia for elevated LFTs and NASH, with ongoing consideration for liver biopsy and H. pylori eradication testing. (AR 853, 854, 869, 878, 880, 884, 888, 899)
- 5/24/17 a follow-up note reports tremors (AR 547); that Mr. Urena reported that he does not think diabetes is important enough to talk about, and also stated that he is not willing to take care of the diabetes because he has other issues (AR 549);
- 6/11/19 endocrinology follow-up notes improved memory when his blood sugars are lower (AR 438); that His blood sugar was reported to be 276, noting that he forgot to put his medications in his bag. (AR 438) and his A1c was 9.7% (232 average) (AR 447); a treatment note from Paula Phillips, M.D., dated September 10, 2020, documents Mr. Urena was seen for follow-up on his diabetes, reporting he discontinued the medications for a few days "to see if he still needed it," which he did not check his blood glucose, but

had excessive thirst and urination when off (AR 415); that he stated that his memory issues were due to a history of traumatic brain injury, and he was also told he has frontal lobe dementia; that he was observed taking verbal notes on his phone regarding the doctor's suggestion (AR 415); that he described sleep disturbance, blurry vision, double vision, shortness of breath, asthma, numbness of hands, headaches, and a history of head injuries with post-concussive syndrome (AR 416); and that Mr. Urena was assessed with diabetes mellitus type II with hyperglycemia, type II diabetes mellitus with diabetic nephropathy, stage II chronic kidney disease, vitamin D deficiency, fatigue, hypercholesterolemia, and a personal history of traumatic brain injury (AR 417-418); the treatment plan included a recommendation to set an alarm to take medications (AR 416);

- 12/17/20 follow-up note documents recommendation to continue on Kombiglyze 2.5/1000mg, increase the dosage of Glipizide ER to 5mg, and start Pioglitazone 15mg (AR 422);
- 6/6/22 treatment note from Sidra Khan, M.D., dated June 6, 2022, documents that Mr. Urena reported experiencing fatigue, pain in the armpits, nausea, which started in January of 2019, and that he was vomiting an extreme amount; that he reported that he was diagnosed with the early stages of dementia 4 years ago (AR 1107); that during the conversation, he pulled out his phone with pictures of blood in the stool and blood in the vomit in the past few months (AR 1107); examination findings document that he had pressured speech, racing thoughts, and was very talkative. (AR 1107). Mr. Urena was assessed with type II diabetes mellitus, hemoptysis, melena, and chronic back pain. (AR 1107- 1108);
- 12/28/20 follow-up exam notes persistent reflux and epigastric pain and that he was positive for depression, anxiety, and fatigue (AR 524). He was assessed with type II diabetes mellitus, essential hypertension, vitamin D deficiency, GERD, mixed anxiety and depressive disorder, and mixed hyperlipidemia (AR 525); these records document that Mr. Urena refused diabetes treatment but was prescribed Vitamin D, Lisinopril, and Escitalopram (AR 525); a treatment note from Bassem Kelada, M.D., dated
- 9/7/22 visit documents Mr. Urena presented with an HgbA1c of 11.9, reporting that he has not been compliant with medication “for a long time” (AR 1100); Mr. Urena was prescribed Kombiglyze XR 2.5- 1000mg, Glipizide 5mg, Aspirin 81, and Lisinopril 10mg (AR 1101-1102) and referred to gastroenterology for evaluation of the fecal occult blood (AR 1102);
- 10/10/22 ultrasound of the abdomen documenting a limited exam given his anxiety and overlying bowel gas, but the liver was slightly prominent in size and showed a slightly increased echogenic appearance, suggesting fatty infiltration (AR 1114); that a follow-up note from Dr. Kelada, dated October 19, 2022, documents that Mr. Urena requested referrals, stating he has trouble with his toenails, and requested a referral for physical therapy for his back and cervical area (AR 1087); that the treatment plan included Kombiglyze XR 2.5-1,000 mg, Glipizide 5 mg, Aspirin 81 mg, and Lisinopril 10 mg (AR 1089); that Dr. Kelada noted that Mr. Urena's thoughts appeared scattered, and he was referred to neurology for evaluation of forgetfulness (AR 1089).

MSJ at 10–12

Plaintiff describes these records variously as “significantly abnormal,” “esoteric,” “not

readily understandable for a layperson," or "raw medical data." Again, many of the above cited records do not qualify as "not readily understandable by a lawperson." For example, 1- family history of colon polyps; 2- non-specific abdominal pain; 3- loose stools; 4- reflux symptoms; 5- vitamin D deficiency; 6- fatigue; 7-nausea; 8- anxiety; 9- flu-like symptoms; 10- shortness of breath; 11- chronic back pain.

Plaintiff also cites high A1c, elevated AST and ALT, unfavorable lipid profiles, decreased gallbladder ejection fraction, and types and dosages of medications as well as other data points. Although these may well constitute "raw medical data," the mere presence of raw medical data in the record does not necessarily mean that the ALJ translated that raw medical data into functional terms. The "functional terms" that pertain to Plaintiff's physical RFC are the abilities to perform the full range of medium exertional work, including occasionally lifting 50 pounds, frequently lifting 25 pounds, and standing and walking two-thirds of an 8-hour day. SSR 83-10.

Importantly, the ALJ did not rely on raw medical data in formulating the RFC, rather as Defendant explains, "Instead, the ALJ relied on straightforward findings. Unremarkable physical examinations, including intact strength and gait, supported the ALJ's conclusion that Plaintiff could do medium work (AR 24). Limited psychological treatment, combined with unremarkable mental status examination findings, supported the ALJ's conclusions about Plaintiff's mental abilities (AR 24). This evidence did not need expert interpretation. And while Plaintiff was not as limited as he claimed, the ALJ still accommodated Plaintiff's alleged limitations to the extent they were consistent with the record (AR 24). To the extent the ALJ considered diagnostic findings, the Ninth Circuit has made clear an ALJ can use this information. See Woods, 32 F.4th at 794 (ALJ properly relied on MRI findings)."

This is exactly what the ALJ is tasked with doing, "translating and incorporating clinical findings into a succinct RFC," Rounds v. Comm'r, 807 F.3d 996, 1006 (9th Cir. 2015). The ALJ is not tasked with determining, for example, whether estimated glomerular filtration rate (eGFR) of 82,[1] implies a claimant can or cannot perform medium work. "ALJs are, at some level, capable

[1] 82 corresponds to mild kidney function loss. https://www.mayoclinic.org/diseases-conditions/chronic-kidney-disease/symptoms-causes/syc-20354521

of independently reviewing and forming conclusions about medical evidence," Farlow, 53 F.4th at 488. "ALJs need not seek the opinion of a medical expert every time they review new medical evidence and make a RFC determination." Bufkin v. Saul, 836 F. App'x 578, 579 (9th Cir. 2021). There is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question. Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). Further, "The decision to purchase a consultative examination will be made on an individual case basis," not that it will be purchased in every case. 20 C.F.R. 404.1519.

Here, the ALJ did not "translate" Plaintiff's raw medical data but rather observed the contexts in which these various medical findings might manifest into functional limitations. For instance, a physical examination showing normal motor function, range of motion, and gait has readily apparent relevance to the ability to lift weight, stand, and walk. Conversely as an example, the finding that Plaintiff had a mildly decreased gallbladder ejection fraction does not have apparent relevance to one's physical exertion level, nor does Plaintiff contend it does, and the finding itself was described as mild.

In addition, Plaintiff's discussion is non-responsive to the ALJ step two findings. For example, Plaintiff discusses at some length his hyperlipidemia and GERD. The ALJ specifically identified those as non-severe impairments. Although they were considered at the RFC stage in accordance with the regulations, they were determined to be either minor or temporary. AR 20.

Plaintiff then relies on broad principles of law. For instance, Plaintiff explains that "The recently decided case of Heskett v. Bisignano, 1:25-cv-00274-SKO, 2025 WL 19933698 (E.D. Cal. Jul. 17, 2025) is instructive here." MSJ at 13. Plaintiff finds the case instructive insofar as the court explained that the ALJ wrongfully "relied on their own judgment in assessing the RFC without the support of any medical opinion evidence." Plaintiff then block quotes 2 single-spaced pages of text from Heskett but importantly there is no accompanying explanation as to how

exactly this principal of law applies to the individual facts of this case. Defendant in response discusses the application of Heskett:

> Indeed, Heskett v. Bisignano, which Plaintiff quotes at length, demonstrates that the ALJ acted within his authority. See 1:25-cv-00274-SKO, 2025 WL 19933698 (E.D. Cal. Jul. 17, 2025). According to Plaintiff's excerpt, the Court faulted the ALJ for relying on diagnostic imaging, without the benefit of other clinical evidence establishing the claimant's functional abilities. See id. at *6-7. In contrast, in this case, the ALJ considered diagnostic findings, but also relied on physical and psychological examinations that were not ambiguous and did not need expert interpretation (AR 24).

Plaintiff continues:

> Although the Plaintiff ultimately bears the responsibility for establishing disability, a review of the additional treating evidence of record documenting the claimant's significantly abnormal cognitive/psychological MSE findings and symptomology compounded with the medical evidence of record documenting his "treatment" (or lack there of) for "uncontrolled" diabetes which lead to significant complications from chronic kidney disease, establishes that Mr. Urena lacked the necessary insight into his multifactorial condition and was unable to provide the requisite evidence for the ALJ to be able to make a clear determination of the extent of Mr. Urena's limitations, further triggering the ALJ's duty to further develop the record.
>
> A review of the evidence of record documents that there are multiple "raw" treatment records from physicians and specialists, that are far from "straightforward," documenting Mr. Urena's uncontrolled diabetes which resulted in chronic kidney disease, as evidenced by abnormal esoteric laboratory findings, not necessarily easily understood by a lay person, that are also coupled with documented significantly abnormal MSE and cognitive findings, including "limited" insight into the severity of his physical conditions, indicating a severe psychiatric/cognitive impairment, which would explain his failure to follow treatment for uncontrolled diabetes which has resulted in chronic kidney disease (CKD) and eventually uncontrolled vomiting and blood in the stool. These records documenting the severe, multifaceted psychological/cognitive and physical diagnoses further exemplify the significant complexity of this evidence of record which is not susceptible to lay function-by-function limitation determination and triggered the ALJ's duty to develop the record.
>
> …Furthermore, a review of Mr. Urena's at times rambling testimony reveals that Mr. Urena lacked the necessary insight into the severity of his multiple conditions and was unable to provide the requisite evidence for the ALJ to be able to make a clear determination of the extent of Mr. Urena's limitations, further triggering the ALJ's duty to develop the record. Notably, the ALJ fails to discuss the fact that Mr. Urena's testimony was at times incoherent and unresponsive to the questions presented by the ALJ and the hearing attorney

MSJ at 9–10, 14 (emphasis added).

First, Plaintiff's argument does not satisfactorily explain just how Plaintiff's alleged lack of insight about his "multifactorial" condition triggered the ALJ's duty to further develop the record.

In relevant part, the ALJ explained:

> In October 2022, the claimant complained of forgetfulness and displayed scattered thoughts in his examination (13F/42). However, the claimant has not received significant psychiatric care during the period that he is alleging disability. During his physical examinations, the claimant's psychological presentation has been essentially normal. He appears alert and fully oriented and displays a normal mood and affect with no signs of depression or anxiety, or paranoid ideation (11F/3, 8, 14; 13F/19, 60).
>
> Likewise, the claimant has had limited psychological treatment during the period that he alleges disability. His mental status examinations are generally unremarkable (13F/19, 60).

This finding by the ALJ strongly suggests that Plaintiff's alleged lack of insight into his condition was rather minimal.

Next are further findings made by the ALJ:

> The medical record shows that the claimant has a history of diabetes mellitus type 2, which is often uncontrolled (4F/10; 6F/13; 8F/27; 9F/3). The claimant's doctor recommended that he follow a diabetic diet, exercise 30 minutes per day, and check his blood sugar two to three times per day (4F/18; 13F/48). <u>However, the claimant has been "very noncompliant" with his diabetes treatment</u> and acknowledges that he does not check his blood sugar levels (6F/13; 13F/49; 19F/4).
>
> The claimant also has a history of generalized abdominal pain and gastrointestinal issues (7F/3, 34). In October 2022, he complained of intermittent diarrhea and showed diffuse mild abdominal tenderness (11F/2, 3). <u>However, he was in no distress, had normal muscle tone, and moved all extremities well (11F/3). Chest x-rays showed no acute cardiopulmonary disease</u> (11F/5). A computed tomography <u>(CT) scan of the claimant's abdomen identified mild wall thickening of the small bowel and duodenum</u> suggestive of pneumatosis intestinalis (11F/22). <u>However, the claimant's doctors noted that this was thought to be noncontributory to the claimant's symptoms</u> (11F/19). He was diagnosed with diabetic gastroparesis (11F/2). The claimant left against medical device, so no discharge instructions could be provided (11F/2)
>
> The claimant continues to complain of periodic nausea and vomiting

> (13F/9, 10; 17F/23, 33, 47). However, his abdomen appears soft with no tenderness or distension, and he appears alert with no signs of respiratory distress (17F/23, 34, 48). Diabetic foot examinations have also been normal (13F/19, 54). The claimant's physical examinations are regularly and routinely unremarkable. He exhibits intact sensation, intact motor function, intact coordination, an intact gait, and normal range of motion, with no abdominal tenderness, and no focal neurological deficits (8F/4, 48; 9F/5; 11F/14; 13F/60; 19F/7).
>
> In terms of the claimant's alleged mental impairments, the record shows that the claimant reports a history of multiple concussions from assaults and head injuries from football (6F/77, 98). In November 2014, he reportedly hit his head on a tree branch while out walking (6F/98). A neurologist evaluated the claimant in May 2015 and diagnosed him with post-concussion syndrome (6F/80).
>
> In October 2015, the claimant complained of sadness, distractibility, poor concentration, and mood swings (6F/79). He appeared restless and showed pressured speech and tangential thought processes in his examination (6F/80). A psychiatrist noted that the claimant's history of concussions could be responsible for his alleged memory problems and mood swings (6F/80). In May 2022, the claimant complained of general confusion after he was involved in a motor vehicle accident (8F/47). However, he denied head trauma or loss of consciousness (8F/47). In October 2022, the claimant complained of forgetfulness and displayed scattered thoughts in his examination (13F/42). However, the claimant has not received significant psychiatric care during the period that he is alleging disability. During his physical examinations, the claimant's psychological presentation has been essentially normal. He appears alert and fully oriented and displays a normal mood and affect with no signs of depression or anxiety, or paranoid ideation (11F/3, 8, 14; 13F/19, 60).
>
> . . . The medical record also shows that the claimant regularly exhibits intact sensation, intact motor function, intact coordination, an intact gait, and normal range of motion, with no abdominal tenderness, and no focal neurological deficits (8F/4, 48; 9F/5; 11F/14; 13F/60; 19F/7). Likewise, the claimant has had limited psychological treatment during the period that he alleges disability. His mental status examinations are generally unremarkable (13F/19, 60). Taken as a whole, the record does not demonstrate that the limitations resulting from the claimant's impairments are totally work preclusive, or greater than provided in the above residual functional capacity assessment.

AR 23–24 (emphasis added).

To summarize the above findings, the ALJ supported the RFC with the following facts: 1- treatment non-compliance, 2- with respect to abdominal pain, mild tenderness on exam, mild findings on imaging, and the doctor's statement that those findings are non-contributory to the symptoms; 3- physical exams were generally unremarkable as to coordination, range of motion, gait, and similar findings; 4- lack of significant psychiatric care; 5- when Plaintiff did undergo

psychiatric exams they were often normal[2] with alertness and full orientation, normal mood and affect with no signs of depression or anxiety, or paranoid ideation.

The ALJ drew reasonable inferences from uncomplicated clinical findings,[3] did not attempt to or purport to extrapolate functional limitations from raw data or esoteric findings while supporting the RFC with accurate and thorough citations to the record.

Plaintiff has therefore not established any inadequacy in the RFC, nor contend directly that the RFC is in fact inadequate. Nor has Plaintiff established that the ALJ needed to develop the record further by ordering a consultative opinion, or that the ALJ's decision fails to be supported by substantial evidence.

**D. Possible Waiver**

Plaintiff claims in his complaint that the ALJ committed harmful error by not ordering neurological /cognitive/psychological consultative examinations. MSJ at 8. However, if the Plaintiff failed to make this request at the administrative level then a possible issue arises as whether he has waived the right to now raise it for the first time in this appeal.

In Meanel v. Apfel, the Ninth Circuit made clear that, "at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal in federal court." 172 F.3d 1111, 1115 (9th Cir. 1999), as amended (June 22, 1999).

In citing Meanel, the Court in Redmond stated, "Courts in this circuit have applied Meanel in a variety of factual contexts, including the waiver of an argument that the mental health

---

[2] Although Plaintiff identifies some examples to the contrary, if the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).

[3] As the ALJ is permitted to do and tasked with. Rounds v. Comm'r, 807 F.3d 996, 1006 (9th Cir. 2015) (noting the ALJ is responsible for "translating and incorporating clinical findings into a succinct RFC,"); Katie E. B. v. Kijakazi, No. 20CV2354-MDD, 2022 WL 4595062, at *8 (S.D. Cal. Sept. 30, 2022) ("As a layperson, an ALJ is not qualified to extrapolate functional limitations from 'raw medical data' but may make reasonable inferences from medical evidence susceptible to a lay understanding." (emphasis added).

record should have been developed further by the ALJ." Redmond v. Berryhill, No. 17-cv-01603-DMR, 2018 U.S. Dist. LEXIS 110473, at 38-39 (N.D. Cal. July 2, 2018) (citing Johnson v. Colvin, No. ED CV 15-02239 AFM, 2016 U.S. Dist. LEXIS 105194, 2016 WL 4208434, at *3 (C.D. Cal. Aug. 8, 2016) (relying on Meanel, and holding that "neither Plaintiff nor his counsel suggested that the ALJ . . . should send Plaintiff to a mental evaluation, or should further develop the record in any other way. As such, Plaintiff waived any arguments on [this issue].").

Additionally, Under Ninth Circuit law, the Court can excuse this failure to preserve issues only "when necessary to avoid manifest injustice." Meanel, 173 F.3d at 1115; Phillips, 593 Fed. Appx. at 684; Simpson, 2016 U.S. Dist. LEXIS 71648, 2016 WL 3091487 at *2.

However, the Court need not address this issue further given its findings set forth above.

## VII. Findings and Recommendation

For the reasons stated above, substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, the recommendation is that:

1. Plaintiff's Motion for Summary Judgment, ECF No. 15, be **DENIED**
2. Defendant's Cross Motion, ECF No. 17, be **GRANTED**
3. That the Commissioner's decision be **AFFIRMED**
4. That the Clerk of Court be directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff.

## VII. Objections Due Within 14 Days

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file

objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 18, 2026**

**/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE